IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| SUSAN KIND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 05 C 0793 |
| v. | ) | |
| | ) | Judge Mark Filip |
| ALBERTO R. GONZALES, Attorney | ) | |
| General of the United States, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Susan Kind ("Plaintiff" or "Kind"), is suing Alberto Gonzalez, Attorney

General of the United States ("Defendant"), for violation of Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991

("Title VII"). (Complaint, D.E. 1.)[1]  Before the Court is Plaintiff's Motion for Leave to

File an Amended Complaint. (D.E. 34.) Defendant opposes the motion on the grounds

that: (1) the amendment would be futile; (2) Plaintiff has unjustifiably delayed in moving

to amend; and (3) Defendant would be unduly prejudiced if the amendment were

allowed. (D.E. 39.) For the reasons stated below, the Court grants Plaintiff's motion in

part and denies it in part. Specifically, the Court denies Plaintiff's motion for leave to

file the Amended Complaint to the extent that it attempts to state a claim relating to

Plaintiff's experiences "during new agent training" and/or prior to her termination as a

special agent. The Court grants Plaintiff's motion for leave to file the Amended

Complaint to the extent it avers a claim for retaliatory discharge.

---

[1] "D.E." refers to the docket entry of the cited document, followed by the appropriate page or paragraph
number.

RELEVANT FACTS

In June 2002, Plaintiff was hired as an FBI special agent subject to a two-year probationary period. (D.E. 1 at 2; D.E. 9 at 2.) Prior to this time, she was employed as an investigative specialist in the Chicago Division of the FBI, a position she still holds. (D.E. 1 at 2-3; D.E. 9 at 2.) Ms. Kind began FBI special agent training in Quantico, Virginia, in October 2000. (D.E. 1 at 2; D.E. 9 at 2.) Before graduation, on or about February 1, 2001, the FBI removed Plaintiff from special agent training[2] (D.E. 44 at 3; Id., Ex. A at 2), and on March 13, 2001, she resumed her previous work in Chicago. (D.E. 44, Ex. A at 5.) Nearly three months later, in June 2001, the FBI informed Plaintiff that she had been dismissed as a special agent, and she formally returned to the position of investigative specialist. (D.E. 1 at 2; D.E. 9 at 3.)[3]

In response to having been dismissed from the special agent position, on August 14, 2001, Plaintiff contacted an Equal Employment Opportunity counselor regarding her experiences as a special agent. (D.E. 36, Ex. C at unnumbered page 1; D.E. 39, Ex. 3 at 2-3.) In November 2001, she filed a "Complaint of Discrimination" with the Department of Justice (the "EEO Charge") against the FBI in relation to those experiences. (D.E. 36, Ex. C; D.E. 39, Ex. B.) She was later informed, in a letter from the FBI's Office of Equal Employment Opportunity Affairs ("OEEOA") to her counsel, dated March 8, 2002, that the OEEOA had accepted one issue contained in her EEO Charge for investigation,

---

[2] Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Leave to File an Amended Complaint states that she was removed from new agent training on "February 1, 2000" (D.E. 44 at 3), although Exhibit A thereto alleges that this event occurred on "01/31/01." ((Id., Ex. A at 1) (the first actual page of Exhibit A to D.E. 44 is not numbered).) Given that Plaintiff did not start special agent training until October 2000, the Court assumes that the "February 1, 2000" date is a typographical error and should have read "February 1, 2001."

[3] Plaintiff contends that the FBI informed her of this fact on June 21, 2001 at a meeting. (D.E. 1 at 2.) Defendant contends that the letter informing Plaintiff of her dismissal was dated June 22, 2001. (D.E. 9 at 3.) The letter Plaintiff's counsel received in response to her EEO Charge indicates that she was notified of her termination as a special agent on June 28, 2001. (D.E. 39, Ex. A at 2.)

namely "whether [Kind] was discriminated against based on her sex (Female) when: on June 28, 2001, she received notification that she had been removed as a Special Agent from the FBI's New Agents' Training Program." (D.E. 39, Ex. A at 2.)  Kind was informed in the same letter that incidents she described in her EEO Charge relating to her experiences as a special agent on November 8, 2000, February 1, 2001, and February 20, 2001 were not accepted for investigation because she did not "timely contact an EEO counselor" regarding these issues.  (*Id.* at 2-3.)  Ms. Kind was informed, via this same letter to her counsel, that she had 15 days to inform Equal Employment Opportunity ("EEO") Officer Joyce M. Atkins if she disagreed with the decision not to accept these allegations dating from November 2001 through February 2002.  (*Id.* at 3.)  Defendant alleges, and Kind does not deny, that she never responded to this letter, nor disputed or expressed any objection to its untimeliness determination.  (D.E. 39 at 2; *Id.*, Ex. B; D.E. 44.)[4]

On February 5, 2005, Plaintiff initiated the present action alleging claims related to her dismissal as a special agent, particularly that she was "dismissed as a Special Agent on account of her sex in violation of Title VII" and that "the FBI has engaged in a pattern of discrimination against new female Special Agents" in applying certain "Suitability Guidelines" for special agents.  (D.E. 1 at 2.)  In light of these allegations, Plaintiff sought a finding "that [D]efendant violated Title VII in connection with its decision to dismiss [P]laintiff as a special agent," among other requests for relief.  (D.E. 1 at 2-3.)

---

[4]  Neither Plaintiff nor Defendant provided the Court with the EEO "right to sue letter."  As Defendant has not moved to dismiss Plaintiff's Complaint on such basis or otherwise objected, the Court assumes that such a letter exists.

Some eight months after the discovery period commenced, Plaintiff sought leave of court via the instant motion to file an Amended Complaint. The proposed Amended Complaint alleges first that Defendant violated Title VII in connection with incidents that occurred during Plaintiff's time at Quantico between October 2000 and March 2001. Particularly, Plaintiff seeks leave to allege that she was subject to "discriminatory treatment and sexual harassment during new agent training, in violation of 42 U.S.C. §2000e, *et seq*." (D.E. 39, Ex. A at 3 (certain internal capitalization omitted).) Second, Plaintiff seeks leave to amend her complaint as it relates to her dismissal as a special agent so as to add an allegation that "[D]efendant refused to allow Plaintiff to complete new agent training and converted her to a lower position in the FBI on the basis of her sex and *in retaliation for her complaining of such discrimination*, in violation of 42 U.S.C. §2000e." (*Id.* at 4 (emphasis added).)

## LEGAL STANDARDS

Given the posture of this case, the Plaintiff may amend her Complaint "only by leave of court or by written consent" of Defendant. *See* Fed. R. Civ. P. 15(a). Defendant has not consented to Plaintiff's filing of the proposed amended complaint, and, in fact, opposes the proposed amendment. (D.E. 39.)

Under Rule 15(a), leave to amend shall be "freely given when justice so requires." Fed. R. Civ. P. 15(a). However, "leave is inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Villa v. City of Chicago*, 924 F.2d 629, 632 (7th Cir.1991) (citing *Foman v. Davis*, 371 U.S. 178, 183

(1962)). In deciding whether to allow the amendment of pleadings, the district court is to exercise its informed discretion. *See, e.g., Johnson v. Methodist Med'l Ctr. of Illinois*, 10 F.3d 1300, 1303 (7th Cir. 1993) (citation omitted); *Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir. 1992) (citation omitted).

## ANALYSIS

In its opposition to Kind's motion for leave to amend, Defendant argues that denial is appropriate because: (1) the proposed amendment is futile; (2) Plaintiff has unjustifiably delayed in asserting proposed new claims; and (3) the proposed amendment would unduly prejudice Defendant. (D.E. 39 at 1.) The Court agrees that Plaintiff's proposed amendment relating to her treatment during special agent training is untimely and thus futile. Independently, such an amendment (*i.e.*, an amendment seeking to advance a hostile environment/harassment claim concerning the multi-month training period) would cause undue prejudice, particularly given the belated nature of the proposed amendment. By way of contrast, Plaintiff's proposed claim relating to her allegedly retaliatory discharge is not obviously futile. In addition, allowance of the retaliatory discharge claim at this juncture would not unduly prejudice Defendant, given the limited scope of additional discovery needed to fairly assess that particular claim.

I.     Scope of Motion

As an initial matter, the Court must deal with the Parties' disagreement as to whether Plaintiff moves to add one new claim or two. In her motion for leave to amend and memorandum in support thereof, Plaintiff described only one new claim for "retaliation" that she sought to add.[5] (D.E. 34; D.E. 36.) Defendant argues that because

---

[5] In reality, proposed Count II, which states that "Defendant refused to allow [P]laintiff to complete new agent training and converted her to a lower position in the FBI on the basis of her sex and in retaliation for her complaining of such discrimination in violation of Title VII . . ." (D.E. 36, Ex. A at 4), is a revised

Plaintiff's proposed Amended Complaint also contains a new "hostile environment" claim, the Court should deny Plaintiff's motion "because nowhere in her motion does she seek leave to include this new claim in the proposed amended complaint." (D.E. 39 at 5.) Plaintiff replies that she has not asserted a "new" claim relating to a "hostile environment," but has merely refined her claim for discrimination on the basis of sex. (D.E. 44 at 1-2.) Although the Court shares Defendant's frustration that Plaintiff made numerous changes to her Complaint in the proposed Amended Complaint without alerting the Court to these inclusions, thus requiring the Court to compare the Complaint with the proposed Amended Complaint line-by-line itself, the Court will not deny Plaintiff's motion on this basis alone. Therefore, the Court will consider the motion on the merits as it relates to (1) Plaintiff's proposed new claim relating to her treatment during special agent training (newly proposed Count I) and (2) her allegedly retaliatory discharge (the revised portions of newly proposed Count II).

II.     Leave to Amend In the Form of the Addition of Proposed Count I Is Denied

      A.     The Proposed Amendment Is Rejected As Futile As It Was Not Timely Raised In Administrative Proceedings As Required By Federal Law

            1.     Background Facts and General Standards Concerning Futility Under Fed. R. Civ. P. 15

Plaintiff proposes to add a new claim, proposed Count I, concerning an alleged hostile environment or sexual harassment during her special agent training. Defendant contends that Plaintiff's motion to add a "hostile environment" claim should be denied as futile because Plaintiff failed to timely bring this claim to the attention of an EEO counselor as the law requires. (D.E. 39 at 6.) Defendant attaches a March 8, 2002 letter

---

version of the claim contained in Kind's Complaint for discriminatory discharge. (D.E. 1 ¶ 8) ("Plaintiff was dismissed as a Special Agent on account of her sex"). Therefore, as the Court views it, Kind is now seeking leave to add a retaliatory discharge claim.

6

to Kind's counsel from the OEEOA stating as much. (D.E. 39, Ex. A at 2 (declining to investigate claims relating to Kind's special agent training period "since your client did not timely contact an EEO counselor.").) Similarly, Defendant contends that Plaintiff's EEO Charge did not include her proposed "retaliation" claim, and therefore her motion to add the claim at this time should be denied based on her failure to administratively exhaust this claim. (D.E. 39 at 6-7.) In response, Plaintiff contends that the EEO did not find her "sexual harassment" claim relating to her special agent training to not have been timely presented, but "simply declined to investigation [sic] three specific instances based on timeliness issues." (D.E. 44 at 3.) In addition, Plaintiff alleges that her "retaliation" claim concerning her termination is "within the scope" of her EEO Charge and is therefore properly brought here. (D.E. 44 at 5.) The Court finds Plaintiff's latter contention concerning her retaliation/termination claim to be well-taken; her former contention—regarding presentation of any putative harassment claim concerning her unsuccessful special agent training—is not persuasive, as she did not timely present such a claim for administrative investigation and review as required by law.

Generally, leave to amend is properly denied when the pleading, as amended, would be subject to dismissal. *See Wilson v. American Trans. Air Inc.*, 874 F.2d 386, 392 (7th Cir. 1989). Granting leave to amend in such a situation would be a "futile gesture," and denial of leave to amend is therefore proper. *Id.* (internal quotation marks and citation omitted); *accord, e.g., Moore v. State of Indiana*, 999 F.2d 1125, 1129-30 (7th Cir. 1993) (affirming denial of leave to amend complaint because such amendment would be futile, in that proposed new claims would be properly dismissed as time-barred under Fed. R. Civ. P. 12(b)(6)). As Defendant notes, "[i]t is well-established that a Title

VII plaintiff must file a timely charge with the proper administrative agency as a prerequisite to maintaining an action in federal court. This charge must encompass the acts complained of in the subsequent complaint." *Harvey v. Board of Trustees of Univ. of Illinois,* Nos. 89 C 4956, 89 C 4596, 1989 WL 152536, *2 (N.D. Ill. Dec. 8, 1989) (granting motion to dismiss discrimination claims based on failure to exhaust administrative remedies) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)) (citing Title VII, § 706(b), (e) & (f), 29 U.S.C. § 2000e-5(b), (e) & (f)); *accord, e.g., Sitar v. Indiana Dept. of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003).

The issue of timeliness in this matter is governed by 29 C.F.R. § 1614.105(a)(1), which requires a federal employee who believes he or she has been discriminated against to consult an agency EEO counselor within forty-five days of the allegedly discriminatory action. *See, e.g.*, 29 C.F.R. 1614.105(a)(1)[6]; *Moore v. West,* No. IP 00-0263-C-T/F, 2002 WL 449794, *3 (S.D. Ind. Jan 25, 2002). This time period acts like a statute of limitations—*see, e.g., Rennie v. Garrett*, 896 F.2d 1057, 1062 (7th Cir. 1990)—and is a prerequisite to a Title VII suit based on such claims. *See, e.g., Gibson v. West,* 201 F.3d 990, 993-94 (7th Cir. 2000). Actions that are clearly time-barred may be properly disposed of on a motion to dismiss. *See, e.g., Kauthar SDN BHD v. Sternberg,* 149 F.3d 659, 670-671 & n.14 (7th Cir. 1998) (affirming dismissal of various claims, on

---

[6] The regulation states in pertinent part:

> Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.

> (1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

29 C.F.R. § 1614.105(a)(1).

*de novo* review, as time-barred under Fed. R. Civ. P. 12(b)(6), and collecting extensive analogous circuit court precedent); *Moore*, 999 F.2d at 1129-30 (affirming denial of leave to amend complaint because such amendment would be futile, in that proposed new claims would be properly dismissed as time-barred under Fed. R. Civ. P. 12(b)(6)).

> 2. Proposed Count I, for "Discriminatory Treatment And Sexual Harassment During New Agent Training," Is Not the Subject of Proper Amendment Because of Futility Defects

As clearly indicated in its title, proposed Count I alleges that Kind was discriminated against *during* new agent training. Kind herself has alleged that she began special agent training in October 2000 (D.E. 1 at 2; D.E. 36, Ex. A at 2) and was removed from that training on or around February 1, 2001. (D.E. 36 at 2; *Id.*, Ex. A at 2.) By Kind's own admission, therefore, any actions that might support her proposed claim for "discriminatory treatment and sexual harassment during new [special] agent training" ceased when she was removed from that training on February 1, 2001—the latest time when one could fairly find that her obligation to file a charge concerning harassment in training commenced. Again, reading things most generously to Ms. Kind, her period to properly file an administrative charge concerning alleged harassment during training ended forty-five days later, on March 18, 2001.[7] It is undisputed that Kind first contacted an EEO counselor to complain about the discrimination and mistreatment she alleges to have suffered as a special agent trainee on August 14, 2001—or months after the forty-five day period in which she was required to do so had terminated. (D.E. 36, Ex. C; D.E. 39, Ex. 3 at 2-3.) This untimeliness is the very reason that the OEEOA refused to accept for investigation the issues in Kind's EEO Charge of discrimination relating to conduct

---

[7] Even were Kind to contend that this allegedly "discriminatory treatment and sexual harassment" continued until she returned to her former position in Chicago on March 13, 2001, she still failed to contact an EEO counselor by April 27, 2001, or forty-five days after the improper conduct allegedly occurred.

alleged to have occurred during her training period on November 8, 2000, February 1, 2001 and February 20, 2001. (D.E. 39, Ex. A at 2.)

Plaintiff argues that the "EEO *did not* deny plaintiff the right to pursue claims of sexual harassment," but "simply declined to investigation [sic] three specific instances based on timeliness issues." (D.E. 44 at 3) (emphasis in original.) However, and with all respect, this assertion does not save her motion to amend as to Count I. Since the proposed "sexual harassment"/"hostile environment" claim is subject to the same timeliness issues as those issues rejected by OEEOA, Kind argues a distinction without a difference. Moreover, to the extent that Kind did not timely present a more sweeping sexual harassment claim to the OEEOA, such that the hostile workplace/sexual harassment claim concerning training has *never* been administratively presented at all, that shortcoming does not cure the untimeliness problem, but instead exacerbates it. Ms. Kind's failure to timely report her allegations of discrimination and sexual harassment concerning her special agent training to an EEO counselor renders the claim improper in this forum, and renders the proposed amendment improper as well. *See, e.g., Moore*, 999 F.2d at 1129-30; *see also Hentosh v. Herman M. Finsch Univ. of Health Sciences*, 167 F.3d 1170, 1175-1176 (7th Cir. 1999) (upholding dismissal of Title VII claims as time barred when they were not timely brought to the attention of the EEOC).

The Court recognizes that there are limited instances in which failure to contact an EEO counselor within forty-five days of the alleged offending conduct might not render the allegation untimely and thus futile. *See id.*, 167 F.3d at 1174 (stating that failure to contact an EEO counselor within 45 days may not render a federal employee's Title VII claims futile, as such claims are potentially subject to "waiver, estoppel, and

equitable tolling under appropriate circumstances") (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). Here, however, Kind has not alleged or even hinted that she was prevented from making contact with an EEO counselor within forty-five days of the alleged mistreatment/harassment. Neither does she allege or even hint at any other reason that equitable estoppel, waiver, or tolling might apply, despite taking an extended opportunity to argue why her proposed amendment is not futile. Kind failed to bring her allegations of discriminatory conduct during her special agent training to the attention of the EEOC within forty-five days of the alleged occurrence of this conduct, no exception to the forty-five day rule has even been suggested, and therefore Ms. Kind's attempt to add these allegations to her Amended Complaint now is untimely. *See, e.g., Moore*, 999 F.2d at 1129-30; *Hawkins v. Groot Indust.*, 210 F.R.D. 226, 231 (N.D. Ill. 2002) (Gottschall, J.) (denying motion to amend and add Title VII claims where claims were not timely brought to the EEOC's attention). The amendment would be futile and it is respectfully denied.

      3.     The Amendment in the Form of Proposed Count I Is Independently Denied Because of Undue Prejudice It Would Cause

The proposed harassment/hostile workplace claim is also denied as untimely and as presenting a situation where it would subject the government to undue prejudice and burden if the amendment were allowed. These problems independently warrant rejection of the proposed amendment as to Count I.

A review of the initial Complaint in this case makes clear that no sexual harassment or hostile workplace claim was raised concerning Ms. Kind's special agent training period. In this regard, the Complaint does not once mention or contain the words "harassment" or "hostile workplace." Instead, the Complaint specifically alleged that

"Plaintiff was dismissed as a Special Agent on account of sex, in violation of Title VII." (D.E. 1, ¶ 8.) The Complaint also alleges a disparate impact claim concerning the FBI's special agent suitability guidelines, but that contention has since been abandoned. Suffice to say that a fair reading of the Complaint makes clear that the proposed Count I in the Amended Complaint, which alleges "sexual harassment" and "discriminatory treatment . . . during new agent training" (D.E. 36, Ex. A at 3 (certain capitalization omitted)) would seek to add a materially new claim to the case. *See generally, e.g., Sitar*, 344 F.3d at 726 ("Normally, retaliation, sex discrimination, and sexual harassment charges are not 'like or reasonably related' to one another to permit an EEOC charge of one type of wrong to support a subsequent civil suit for another."). Under the circumstances, such an addition would impose an undue burden on the government and comes after an unreasonable length of time in the discovery period.

Precedent makes clear that mere delay in proposing an amendment, standing alone, is not a sufficient basis to deny that amendment. *See, e.g., Perrian*, 958 F.2d at 194. Nonetheless, "the longer the delay, the greater the presumption against granting leave to amend." *Id.* (collecting cases; internal quotation marks omitted). Here, Plaintiff waited almost a year after the filing of the complaint, and for over eight months after discovery commenced (*see* D.E. 7, 34), to attempt to add a proposed harassment/hostile workplace claim concerning literally months of special agent training. She obviously was aware of her experiences during special agent training, and those experiences were available for discussion with her counsel. It is settled law that a sexual harassment claim (particularly concerning an extended period of time, and concerning exposure to and alleged experiences with a wide variety of people, including many who were not

decisionmakers concerning Plaintiff's eventual termination) is presumptively distinct from a discriminatory firing claim. *See Sitar*, 344 F.3d at 726. A fair examination of such a claim would require discovery concerning the totality of Ms. Kind's experiences during special agent training, as a hostile workplace claim can be (and often is) grounded on allegations of the cumulative effect of alleged mistreatment over an extended period of time. *See, e.g., Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) ("Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The 'unlawful employment practice' . . . occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.") (collecting cases; internal citations omitted).

As a result, allowing the proposed mid-stream introduction of this claim, the facts of which were always readily available to Plaintiff and her counsel, would impose undue and unfair prejudice to the government. The government would need to take additional discovery—to predictably include extended redepositions or interviews of the witnesses additionally relevant to the unlawful termination claim, and also depositions or interviews of additional individuals who had nothing to do with the termination decision but were part of the broader special agent training experience. (*See, e.g.*, D.E. 39 at 11.) Precedent teaches that this sort of additional and material discovery burden warrants denial of a request to amend. *See, e.g., Continental Bank v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993) ("If the amendment were allowed, the bank would have been put to additional discovery, and thus prejudiced."). Under the circumstances, the Court finds that Plaintiff's proposed amendment (in the form of the proposed new count I) would create undue prejudice and therefore independently fails.

III.    Leave to Amend In the Form of the Addition of a Retaliatory Discharge Claim Is Allowed

   A.    The Proposed Amendment Is Not Obviously Futile

Plaintiff seeks leave to add an allegation that "Defendant refused to allow plaintiff to complete new agent training and converted her to a lower position in the FBI on the basis of her sex *and in retaliation for her complaining of such discrimination*." (D.E. 36, Ex. A at 4 (emphasis added).) Defendant argues that Plaintiff's motion to add this retaliatory discharge claim is similarly futile because Kind failed to "administratively exhaust" this claim by including it in her EEO Charge. (D.E. 39 at 6.) Plaintiff responds that because the proposed retaliatory discharge claim is "within the scope" of the claims in her EEO Charge, it is not futile. (D.E. 44 at 5.) The Court agrees with Plaintiff.

"Filing an EEOC charge, of course, is a prerequisite to suit under Title VII, in order for the EEOC to have a chance to settle disputes before lawsuits are undertaken." *Chambers v. American Trans Air, Inc.*, 17 F.3d 998, 1003 (7th Cir. 1994) (affirming summary judgment against claims not raised in EEOC charge; citation omitted). However, a plaintiff may pursue a claim not explicitly included in an EEOC complaint if her allegations "fall within the scope of the charges contained in the EEOC complaint." *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996) (citation omitted). This rule affords the EEO office and the employer an opportunity to attempt to resolve the issue before litigation would potentially eventuate. *See, e.g.*, *Sitar*, 344 F.3d at 726. In determining whether a claim falls within the scope of an EEO charge, courts look to whether the current allegations are "like or reasonably related to" those contained in the EEO charge. *Id.* (internal quotation marks and citation omitted). If the current allegations are "like or reasonably related" to the EEO Charge, the court then asks

whether the current claim reasonably could have developed from the EEOC's investigation of the charges before it. *Id.* Accordingly, as Plaintiff notes, her failure to check the box labeled "reprisal" in her EEO Charge does not necessarily plead her retaliatory discharge claim out of court. *Kristufek v. Hussmann Foodservice Co.*, 985 F.2d 364, 368 (7th Cir. 1993).

As noted above, "[n]ormally, retaliation, sex discrimination, and sexual harassment charges are not 'like or reasonably related' to one another to permit an EEOC charge of one type of wrong to support a subsequent civil suit for another." *Sitar*, 344 F.3d at 726 (citing, *inter alia*, *Cheek v. W. and S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994) (additional citations omitted)). Precedent further teaches that the claims may be "so linked, however, where they are 'so related and intertwined in time, people, and substance,'" that they are fairly deemed encompassed in the filed charge. *Id.* (quoting *Kristufek*, 985 F.2d at 368). The Court finds this to be such a circumstance within the meaning of the precedent.

The issue the OEEOA accepted from Ms. Kind's EEO Charge is quite linked to her proposed retaliatory discharge claim in time, people and substance. Ms. Kind did allege some retaliatory conduct in her EEO Charge, stating that after she reported certain misconduct to superiors, she "was further the victim of retaliation." (D.E. 44, Ex. A at 12.) Her EEO Charge also states that she engaged in protected conduct prior to her termination, in that she spoke to certain instructors about what she viewed as discriminatory treatment. (*Id.* at 11) ("01/30/01 . . . I expressed my concern with my treatment and harassment").[8] The charge asserts that shortly thereafter she was removed

---

[8] Defendant rightly recognizes the Seventh Circuit's teaching that retaliation claims are within the scope of an EEO charge "when the retaliation arose after, and in response to, the initial EEO filing and was reasonably related to that filing, obviating the need for a second EEO charge." (D.E. 39 at 7 (citing

from training and was subsequently terminated as a special agent only months later. (D.E. 44, Ex. A.)

Although the OEEOA declined to investigate most allegedly discriminatory incidents contained in Kind's EEO Charge due to timeliness issues, it did accept her claim that she was discharged for discriminatory reasons.[9] (D.E. 39, Ex. A at 2.) The accepted discriminatory discharge claim involved almost exactly the same "time, people, and substance" as the retaliatory discharge claim Kind now seeks to assert. The "Investigative Summary" prepared in connection with the OEEOA investigation of Kind's discriminatory discharge claim details the statements of twenty individuals with potential knowledge of the reasons for Kind's dismissal as a special agent. (D.E. 39, Ex. C.) In substance, both Kind's claim of discriminatory discharge and proposed claim of retaliatory discharge both relate to the subjective intent of these individuals in deciding to support or oppose Kind's dismissal. The decision to terminate Kind as a special agent was made at the same time whether the reason was discrimination, retaliation, or neither of the two—such as, for example, her alleged deficient performance during and in relation to training. Similarly, the termination decision was made by the same people, whatever their reason(s) for the decision. As a result, the amendment is not futile.

This conclusion is in line with the Seventh Circuit's teaching on whether claims of discrimination and retaliation are "like or reasonably related." *See Kristufek*, 985 F.2d

---

*Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir. 1989)). This teaching is inapposite here, however, as both Parties admit that the alleged retaliation occurred prior to Ms. Kind's filing her EEO Charge in the wake of her termination as a Special Agent.

[9] For clarity's sake, the Court holds that to the extent that Kind is seeking to assert a claim based on the allegedly retaliatory treatment she experienced prior to her discharge in June 2001 (*e.g.*, her assertion that "[a]fter complaining to her supervisors about the treatment she had received during training, plaintiff was subjected to further harassment and discrimination for her complaints" (D.E. 36, Ex. A at 2.)), she is barred from doing so based on her lack of timeliness in bringing these claims to an EEO counselor as required by federal law. That amendment also would cause undue prejudice, as noted above.

at 368. In *Kristufek*, two plaintiffs filed suit against their former employer for age discrimination and one plaintiff also alleged retaliatory discharge, although this claim was not contained in his EEO complaint. *Id.* at 365. The Seventh Circuit nonetheless concluded that the EEOC charges adequately alerted the employer to facts supporting the retaliation claim. *Id.* at 368. In this regard, *Kristufek* noted that "even [] a perfunctory investigation of the charges [should] have revealed the retaliation aspect as part of the whole." *Id.* Here, Kind's EEO Charge gave notice that she reported what she believed to be discriminatory treatment to her superiors, that she believed that she suffered retaliation for that reporting, and that she was fired shortly thereafter. (D.E. 36, Ex. B). Although this may have been incomplete notice of her retaliatory discharge claim, it also "should have been enough." *Kristufek*, 985 F.2d at 369.

The best evidence that Kind's newly asserted retaliatory discharge claim is "like or reasonably related to" the discriminatory firing claim in her EEO Charge is that at least some contentions in support of the retaliatory discharge claim *actually did* develop from the EEO investigation of Kind's discriminatory discharge claim. The "Investigative Summary" of Kind's "Complaint of Employment Discrimination" notes that, in conjunction with the EEO investigation, Michelle Pluta ("Pluta"), one of Kind's instructors, stated that Kind had told her of certain alleged sexist attitudes. (D.E. 39, Ex. C at 20.) Pluta then informed Kind's staff counselor, Stanley E. Letcher, of Kind's allegations. (*Id.*) The Investigative Summary states that "Pluta believes that there is a good possibility Kind would have graduated [*i.e.*, not been terminated from the special agent program] if she (Pluta) had not reported the information . . . ." (*Id.* at 21.)

Because Kind's retaliatory discharge claim is "related and intertwined in time, people and substance" with the discriminatory discharge claim contained in her EEO Charge and accepted for investigation, and because the investigation of that charge led to allegations of possible retaliation, the Court finds that Kind's proposed retaliatory discharge claim is so within the scope of her EEO Charge that its filing would not be futile here. *Kristufek*, 985 F.2d at 368-369.

B.      The Retaliatory Discharge Claim Would Not Cause Undue Prejudice

Defendant claims that Plaintiff has unduly delayed in moving for leave to add a retaliatory discharge claim and therefore her motion to do so should be denied. (D.E. 39 at 1.) Although the Court has previously discussed the undue delay and prejudice that would accompany the addition of a more sweeping hostile workplace/harassment-during-the-totality-of-training claim, the level of prejudice is materially different concerning the addition of a retaliatory discharge claim. In explaining her reason for waiting until ten months after she filed her Complaint to move to amend it, Plaintiff asserts that her attorney only recently learned that her termination may have been an act of retaliation. (D.E. 34 ¶ 5.) Plaintiff claims that during discovery, her counsel learned the identity of the people "who made the decision to terminate her" and that these "were the ones to whom she brought her complaints of harassment and discrimination." (*Id.*)

In an attempt to discredit Kind's explanation for her delay in filing a motion to amend, Defendant argues that Kind "knew of these claims long before filing her complaint" and that she "always believed she was removed because of retaliation." (D.E. 39 at 9; *Id.* at n.3.) In this regard, Defendant may well be correct; however, precedent teaches that "delay by itself is normally an insufficient reason to deny a motion for leave

to amend." *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004) (citation omitted). Instead, precedent teaches that while delay tends to create a presumption of prejudice—*see, e.g., Perrian*, 958 F.2d at 194 (collecting cases)—which is a principal touchstone in assessing the propriety of amendment, the key issue typically is the degree of prejudice an amendment would cause and whether such prejudice is undue. *See, e.g., Chavez v. Illinois State Police*, 251 F.3d 612, 633 (7th Cir. 2001) (internal citation and quotation marks omitted)); *Douglas Press Inc. v. Tabco, Inc.*, No. 00 C 7338, 2004 WL 1144054, *2 (N.D. Ill. May 17, 2004) (granting motion to amend where proposed allegations where "closely related" to prior claims and party claiming undue prejudice could move the court for additional time to perform discovery). Here, an assessment of whether Plaintiff's firing was in retaliation for her prior complaints of discriminatory treatment likely will not entail substantial new discovery—the defense witnesses presumably deny any such allegation, and the key new issue will be determining whether they even were apprised of such prior complaints. In addition, the key witnesses for Plaintiffs likely will be her, Ms. Pluta, and others to whom Ms. Pluta may have spoken. Although it is a close question as to whether such additional discovery burdens would justify allowance or rejection of the proposed new retaliatory discharge claim—in truth, the question is likely one on which a trial court could reasonably exercise its discretion in either direction, *see, e.g., Continental Bank*, 10 F.3d at 1298—the Court will exercise its discretion in Plaintiff's favor. The Court believes such a course is appropriate because of the relatively limited scope of the additional factual dispute(s) introduced by the retaliatory discharge allegation (given that the reasons for the discharge are already at issue) and the fact that the Court will ameliorate any

prejudice to the government by allowing it appropriate time, as reasonably necessary, to conduct any additional discovery required by virtue of the amendment. *Accord DeLuca v. Winer Indus., Inc.*, 857 F.Supp. 606, 608 (N.D. Ill. 1994); *see also Katsiavelos v. Fed. Reserve Bank of Chicago*, No. 93 C 7724, 1994 WL 721192, *1 (N.D. Ill. Dec. 28, 1994) (holding that addition of claim for retaliatory discharge to claim of discriminatory discharge satisfied Fed. R. Civ. P. 15(c)(2), because the claim or defense arose out of the conduct, transaction, or occurrence set forth in the original pleading, and thus the amended claim related back to the original pleading) (citation omitted).

### CONCLUSION

Because Plaintiff failed to timely bring her putative claim of harassment and/or discriminatory treatment during special agent training to the attention of an EEO counselor, her motion to amend as it relates to that claim (proposed Count I) is denied as futile. (D.E. 34.) The motion to add such a claim (proposed Count I) is also independently denied because of the undue prejudice such a claim would cause to the government. Plaintiff's motion for leave to file a claim for retaliatory discharge (proposed Count II) from her position as a special agent is granted. (*Id.*) If the government believes it needs an extension of discovery to address the new allegation, it should seasonably move for reasonable additional time.

So Ordered.

_____
Mark Filip
United States District Judge
Northern District of Illinois

Dated: _5/30/06_